UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DAVID McDOWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:14-CV-99-TAV-CCS |
| ) | |
| KNOLOGY OF KNOXVILLE, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on defendant's Motion for Summary Judgment [Doc. 17]. Plaintiff responded [Doc. 22], defendant replied [Doc. 29], plaintiff filed a supplemental memorandum [Doc. 35], and defendant replied to the supplemental memorandum [Doc. 36]. For the reasons set forth below, the Court finds that genuine issues of material fact exist that preclude summary judgment. Accordingly, defendant's motion for summary judgment will be denied.

**I.     Facts**

Plaintiff, David McDowell, had been employed by defendant, Knology of Knoxville, since 2006 [Doc. 27-9 p. 11]. He was first employed as a service technician, then promoted to a business technician in 2008, and finally promoted to a service supervisor in 2009, which was his position until he was terminated in 2013 [*Id.*]. Plaintiff received several raises while working for defendant [*Id.*; Doc. 27-4 p. 2].

In 2010, plaintiff's supervisor at the time, Wes Pauls, conducted plaintiff's performance review during his second year as a service supervisor [Doc. 27-11 pp. 1–6]. Plaintiff received a total review score of 8.00 out of 10.00, which fell at the high end of the "Meets Expectations" category of the evaluation [*Id.*]. In 2009, plaintiff had a total review score of 4.50 out of 5.0, which fell between "Exceptional" and "Exceeds standards" [*Id.* at. 7–13]. In 2008, he had a total review score of 4.38 out of 5.0, which fell between the same categories as his 2009 review [*Id.* at 14–20].

In July 2012, WOW! purchased Knology of Knoxville and took over the business [Doc. 21-1 p. 3]. At the time, plaintiff was employed as a field service supervisor [Doc. 27-8 p. 2]. Ross Fisher, another field service supervisor, was promoted to operations manager and began supervising plaintiff [*Id.* at 7]. Ross Fisher reported to Kirk Zerkle, the Vice President and General Manager for defendant's Knoxville location [Doc. 27-10 p. 3].

Throughout the seven months between when Fisher was promoted and when plaintiff was terminated, plaintiff had several confrontations with Fisher [Doc. 27-8 p. 9]. These generally started because plaintiff believed that Fisher was trying to "undermine him" [*Id.*]. Plaintiff stated that he and Fisher would have "blowups" because Fisher would give him a directive and then "go[] behind [plaintiff's] back and tell[] the [technicians] to do something else" [*Id.* at 44]. These arguments between Fisher and plaintiff would get heated [*Id.* at 42–47]. On one occasion, near the end of 2012, Fisher told the plaintiff he was "too f------ old to do his job" [*Id.* at 42–47]. On multiple

2

occasions, Fisher called plaintiff an "old fart" [*Id.* at 55]. Plaintiff claims that Fisher called him an "old fart" approximately six times and would refer to him as such in front of the technicians [*Id.* at 50, 55]. The last time that Fisher called him an "old fart" was a few weeks before plaintiff's termination [*Id.* at 55].

On November 29, 2012, Fisher sent plaintiff an email with a document attached listing the expectations and responsibilities of a field service supervisor [Doc. 27-9 pp. 1–2]. Plaintiff believed he had done everything required of him in the expectations and responsibilities [Doc. 27-8 p. 29]. Then on January 11, 2013, Fisher gave plaintiff a metrics goals and tracking spreadsheet to complete [*Id.* at 3].

Fisher discussed immediately terminating plaintiff with Zerkle [Doc. 27-10 p. 17–22]. After talking with Zerkle, and based on Fisher's understanding of plaintiff's position, Fisher believed that he could not immediately terminate plaintiff without first placing him on a Performance Improvement Plan ("PIP") [*Id.*]. Fisher also had a conversation with James Stewart, the man who eventually replaced plaintiff, in which Fisher told Stewart he could apply for plaintiff's position should it become available [*Id.* p. 37].

On February 21, 2013, defendant placed plaintiff on a PIP [Doc. 27-9 pp. 4–5]. This was the first disciplinary document that plaintiff ever had in his file [Doc. 27-12 p. 13]. Fisher wrote the PIP with input and changes by others [Doc. 27-10 pp. 25–27]. The PIP documented the concerns defendant had with plaintiff's performance, including the inability to meet the expectations for a field service supervisor; poor time management;

3

lack of field training or coaching to support direct reports; failure to complete the metrics goals and tracking spreadsheet; failure to maintain weekly tracking documents; and failure to property plan for tailgate meetings [Doc. 27-9 pp. 4–5]. Plaintiff admits that he did not fill out the metrics and goals tracking spreadsheet until after he signed the PIP, but disputes the other alleged issues [*Id.* at 29].

The PIP references attachments—A, B, and C— that plaintiff contends he never received [Doc. 27-8 p. 24–25]. As outlined in the PIP, Fisher was supposed to "closely monitor [plaintiff's] performance" and provide plaintiff with feedback [Doc. 27-8 p. 31]. The only time plaintiff and Fisher met regarding plaintiff's performance was on February 27, and during that meeting Fisher did not provide any substantive feedback [Doc. 27-9 p. 5]. Even though the PIP required plaintiff and Fisher to meet weekly on specified dates, plaintiff contends that—other than this February 27 meeting—they never met again to discuss plaintiff's performance under the PIP [Doc. 27-8 p. 32; Doc. 27-9 p. 5]. Plaintiff never heard anything negative about his performance from Fisher between the day the PIP was issued and the day he was terminated [Doc. 27-8 p. 32]. However, Fisher produced four "Coaching for Success" forms that purport to document meetings that plaintiff contends never took place [Doc. 27-11 pp. 179 –81, 183]. Plaintiff never saw these Coaching for Success forms [Doc. 27-10 p. 35]. Zerkle said that he would typically have employees sign something after "coaching" meetings such as these, but Fisher never asked plaintiff to sign anything [Doc. 27-12 pp. 14–15].

4

Plaintiff had been meeting with Zerkle periodically to discuss problems with Fisher and general issues at work [Doc. 27-8 p. 25]. Fisher and Zerkle were giving plaintiff conflicting information [*Id.*]. Zerkle was telling plaintiff to follow the forms and documents that were in place before WOW! took over, while Fisher gave plaintiff new forms to use [*Id.*]. Plaintiff also complained that a process or procedure would change but Fisher would not directly tell plaintiff [Doc. 27-12 p. 10]. Plaintiff met with Zerkle several times even after the PIP was issued to discuss the "blowups" that occurred and specifically told him that Fisher made comments about plaintiff's age [Doc. 27-8 p. 42].

On March 20, 2013, Fisher recommended that plaintiff be terminated for failing to improve his performance under the PIP [Doc. 27-11 p. 164]. In support, Fisher stated that plaintiff failed to research repeat service and installs as expected; failed to adequately support his direct reports though training; failed to complete the metrics goals and tracking spreadsheet; failed to maintain weekly tracking documents; and failed to improve his preparation for tailgate meetings [*Id.*]. Zerkle approved the recommendation [Doc. 27-12 pp. 5–6]. Donna Barone, Human Resources Generalist, Liesa Chastain, Human Resources Director, Deborah Ruhmann, Vice President Human Resources Operations, and Mark Dineen, Senior Vice President Southeast Region, were also involved in the decision-making process [Doc. 27-3 p. 3]. Fisher's recommendation was approved without any independent investigation and the decision-makers relied on only, what plaintiff contends, was false documentation [Doc 27 p. 14; Doc. 27-5 p. 1].

5

On April 4, 2013, Fisher and Barone met with plaintiff and Fisher informed him that he was being terminated [Doc. 27-8 pp. 39–40]. Fisher explained to plaintiff that he did not meet up to WOW!'s expectations [*Id.* at 40]. Barone then provided him with information on continuing benefits [Doc. 27-10 p. 47]. Plaintiff was fifty-one years old when he was terminated [Doc. 27-4 p. 4].

James Stewart filled the vacancy created by plaintiff's termination [*Id.*]. He was forty years old at the time [*Id.*]. Defendant hired Stewart on the recommendation of Fisher and Zerkle [Doc. 27-12 p. 20]. Defendant interviewed one other individual for the vacancy, and he was a "younger guy" [Doc. 27-10 pp. 37–38].

Mr. McDowell filed this action alleging that defendant's actions violated the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 [Doc. 1].

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if a reasonable trier of fact could find in favor of the non-moving party. *Id.* The moving party bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Phillip Morris Cos.,*

*Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). Accordingly, all facts and all inferences to be drawn from them must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). Likewise, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (internal quotations omitted).

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Anderson*, 477 U.S. at 250. Thus, the Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. The Court also does not search the record "to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479–80. In short, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a trier of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.    Affidavits of Wes Pauls and Terry Dalton

Before turning to the analysis, the Court notes that the parties spent a large portion of the overall briefing, and all of the supplemental memoranda, arguing for and against the admission of two documents: the affidavits of Wes Pauls and Terry Dalton. The Court declines to rule on the admissibility of these documents because the Court need not consider the documents to come to its conclusion, nor would the documents alter the Court's conclusion that there is a genuine issue of material fact that precludes summary judgment in defendant's favor. Consequently, the Court will make no further reference to these affidavits.

## IV.    Analysis

Plaintiff has brought age-based discrimination claims against defendant under the Age Discrimination in Employment Act ("ADEA") and the Tennessee Human Rights Act ("THRA"). 29 U.S.C. § 621, *et seq*; Tenn. Code Ann. § 4-21-101. The same analysis applies to age-discrimination claims brought under the ADEA and the THRA. *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 620 (6th Cir. 2006).

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "The purpose of the ADEA . . . is to protect older workers from being 'deprived of employment on the basis of inaccurate and stigmatizing stereotypes,' and to ensure that employers evaluate their employees on the

8

basis of their merits, and not their age." *Allen v. Diebold*, 33 F.3d 674, 676–77 (6th Cir. 1994) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).  There are two ways that a plaintiff can prove an ADEA violation: by direct evidence or by circumstantial evidence.  *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).  Plaintiff argues that he can survive summary judgment by direct or circumstantial evidence.

### A. Direct Evidence of Discrimination

Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (internal quotation marks omitted)).  "Direct evidence does not require the fact-finder to make any inferences or presumptions." *Brewer v. New Era, Inc.*, 564 F. App'x 834, 838 (6th Cir. 2014) (citation and internal quotation marks omitted).  "[S]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (first alteration in original) (internal quotation marks and citation omitted).  Similarly, "[i]solated and ambiguous comments are insufficient to support a finding of direct discrimination." *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 239 (6th Cir. 2005).  Courts must consider statements by individuals who were "meaningfully involved in the decision to

9

terminate an employee" and who "contributed significantly to the decision." *Wells v. New Cherokee Corp.*, 58 F.3d 233, 238 (6th Cir. 1995).

Plaintiff argues that several statements Fisher made to plaintiff could constitute direct evidence. While Fisher was not the "decision-maker" in the sense that he was not the final person up the in defendant's hierarchy to approve the decision, he did "contribute significantly" to that decision. Fisher was plaintiff's immediate supervisor, and it was because of his comments and recommendation that plaintiff was terminated [Doc. 27-11 pp. 21–22]. Defendant identified Fisher in its answers to interrogatories when asked to "state the name . . . of all persons participating in the decision-making process that led to the decision to terminate the Plaintiff" [Doc 21-12 pp. 3–4]. Fisher was the person who actually informed plaintiff that he was terminated. The only other people in this termination meeting were plaintiff and Donna Barone from Human Resources. Plaintiff contends that he does not even recall Barone saying anything,[1] and it was Fisher who told him he was terminated and gave a few limited reasons for the termination [Doc. 27-8 p. 40]. Based on these facts, the Court finds Fisher "contribute[d] significantly" to the adverse decision and that his statements must be considered. *See id.* at 237–38 (holding that it was appropriate to consider the statements of an immediate supervisor, who did not independently fire the plaintiff, but was extensively consulted in regards to the personnel decision).

---

[1] Fisher states that she was at the termination meeting to relay some benefit information [Doc. 27-10 p. 47].

The Court now looks to the specific statements at issue and whether they constitute direct evidence of discrimination. Plaintiff asserts that Fisher called plaintiff an "old fart" on many occasions, and on one occasion, told plaintiff that he was "too f------ old to do his job" [Doc. 27 p. 48]. In examining these remarks, courts consider several factors, including:

> (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.

*Morgan v. New York Life Ins. Co.*, 559 F.3d 425, 432 (6th Cir. 2009) (citation omitted). As to the first factor, the Court has already determined that Fisher is analogous to a decision-maker in this circumstance.

As to the second factor, in *Wells*, the Sixth Circuit found direct evidence of age-based prejudice, but only circumstantial evidence of age discrimination, when a supervisor told the plaintiff, a month before firing her, that she was "too old to do the job." 58 F.3d at 237. Conversely, in *Brewer v. New Era, Inc.*, 564 F. App'x 834, 839 (6th Cir. 2014), the Sixth Circuit found direct evidence of age discrimination when a manager made statements that an employee was "too old" and "needed to retire" two months before the employee was laid off. Here, looking at the facts in the light most favorable to plaintiff, Fisher told plaintiff he was "too old" at least four months before he was terminated. The time period between the biased statements and the termination is several months longer in the instant case than it was in either *Wells* or *Brewer*.

11

Turning to the third factor, the remarks in this case do not appear to be vague, ambiguous, or isolated. Although Fisher said plaintiff was "too old" only on one occasion, Fisher called plaintiff an "old fart" on many occasions. While the "too old" remark on its own may be isolated, and "old fart" taken on its own may not be sufficient to constitute direct evidence, all the age-related statements should be looked at in conjunction with each other. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002) (stating that the "factors . . . must be evaluated as a whole, taking all of the circumstances into account"). *Cf. Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004) (holding that "old fart" taken on its own does not constitute direct evidence because there is no evidence there is a connection to the termination).

Finally, the Court turns to the fourth factor and considers whether the statements were made proximate in time to the act of termination. Plaintiff is unsure of the exact date Fisher said plaintiff was "too f------ old to do his job," but that it was probably close to the end of 2012 [Doc. 27-8 pp. 45–47]. Consequently, this statement was made at least four months before plaintiff's termination on April 4, 2013 [Doc. 21-6 pp. 18–19]. Plaintiff contends that Fisher referred to him an "old fart" about half a dozen times and the last time he made that remark was a couple weeks before plaintiff's termination [*Id.* at 54–55]. Fisher made all of these comments with a seven-month period, from September 2012, when Ross Fisher became plaintiff's supervisor, until April 2013, when plaintiff was terminated [*Id.* at 46–55].

The Court finds that while these statements reflect age-bias, they may be too far removed from the termination decision to constitute direct evidence of age-based employment discrimination. However, the Court need not make that determination, because, as discussed below, the Court finds that plaintiff has raised a material question of fact as to whether plaintiff could prevail under the circumstantial evidence test. The Court will turn now turn to that analysis.

### B. Circumstantial Evidence of Discrimination

Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Geiger*, 579 F.3d at 620 (citation omitted). With respect to his ADEA claim, whether a plaintiff relies on direct or circumstantial evidence, the burden of persuasion remains on the plaintiff to demonstrate by a preponderance of the evidence that age was the 'but-for' cause of the challenged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009); *see, e.g. Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 485 (6th Cir. 2010). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Geiger*, 579 F.3d at 620 (citation omitted).

Discrimination claims based on circumstantial evidence are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410-11

13

(6th Cir. 2008). Under the *McDonnell Douglas* framework, the burden is on the plaintiff to first establish a *prima facie* case under the relevant statute. 411 U.S. at 802. To set forth a *prima facie* case of age discrimination using circumstantial evidence, a plaintiff must establish that:

> (1) he or she was a member of a protected age class (i.e., at least forty years old); (2) he or she suffered an adverse employment action; (3) he or she was qualified for the job or promotion; and (4) the employer gave the job to a younger employee.

*Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014) (citation omitted). This burden "is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Indeed, it is "easily met." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000) (quoting *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)). In this case, defendant concedes plaintiff has met the *prima facie* elements of age discrimination [Doc. 19 p. 12].

After plaintiff establishes a *prima facie* case for age discrimination, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). "Once the defendant meets this burden, 'the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation'" as mere pretext. *Martin*, 548 F.3d at 410–11 (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994)).

### 1. Defendant's Non-Discriminatory Reason for Termination

Because defendant concedes that plaintiff can show the elements of a *prima facie* case, the burden now shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Kline*, 128 F.3d at 348. A defendant is not required to show that it was actually motivated by this nondiscriminatory reason; it simply must raise a genuine issue of fact as to whether it discriminated against plaintiff. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814–15 (6th Cir. 2011) (citing *Burdine*, 450 U.S. at 254). Because a defendant's burden is only one of production, the Court does not assess the credibility of a defendant's proffered reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

Defendant has met its burden here. Defendant explains in its motion papers plaintiff was terminated for poor performance [Doc. 19 p. 7]. Specifically, defendant contends that plaintiff failed to meet the expectations as outlined in the November 29, 2012, email, he had poor time management, he did not provide field training or coaching to his direct reports, he did not complete the metrics goals and tracking sheet, he did not maintain the weekly tracking documents, and he failed to properly plan for tailgate meetings [Doc. 29 p. 3]. Defendant supports its explanation with evidence and testimony from Fisher and plaintiff himself.

If defendant's explanation is true, defendant's action would not constitute discrimination on the basis of age. Therefore, for purposes of summary judgment review, defendant has satisfied its burden to produce a legitimate reason for its action.

### 2. Proof that Defendant's Reason is a Pretext

The burden now shifts back to plaintiff. In this final stage of the analysis, a plaintiff must "demonstrate that the employer's proffered nondiscriminatory reason was not the true reason for the employment decision, but rather a pretext for discrimination." *Provenzano*, 663 F.3d at 815 (citing *Burdine*, 450 U.S. at 256). The burden to demonstrate pretext "merges with [plaintiff's] ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* at 812 (quoting *Burdine*, 450 U.S. at 256). To survive summary judgment, "a plaintiff need only produce enough evidence . . . to rebut, but not to disprove, the defendant's proffered rationale." *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012) (citation and internal quotations omitted).

A reasonable trier of fact may make the ultimate inference of discrimination based upon nothing more than a showing that a defendant's proffered reason is unworthy of credence combined with the facts of the *prima facie* case. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–149 (2000); *St. Mary's Honor Ctr.*, 509 U.S. at 511. Accordingly, a plaintiff can provide sufficient evidence of a pretext for unlawful discrimination "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler*, 317 F.3d at 576 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). "The three-part test need not be applied rigidly. Rather, pretext is a commonsense inquiry: did the employer fire the employee for the

stated reason or not?" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (citation and internal quotations omitted).

Prior to Fisher's promotion, plaintiff had no documented performance issues in the six years that he worked there. After plaintiff was promoted to field service supervisor in 2009, there are no records of any disciplinary actions against or coaching sessions with plaintiff until he began reporting to Fisher in 2012 [Doc. 27-4 p. 3]. In fact, there are no disciplinary documents that predate the PIP in plaintiff's file [Doc. 27-12 p. 13]. Additionally, plaintiff received high marks on all of his previously documented employment reviews [Doc. 27-11 pp. 1–20].

A reasonable jury could find that Fisher placed plaintiff on the PIP with the sole intention of positioning him on a track toward termination in order to hire a younger individual. Before putting plaintiff on the PIP, Fisher discussed immediately terminating plaintiff with Zerkle [Doc. 27-10 p. 17–22]. After talking with Zerkle, and based on Fisher's understanding of plaintiff's position, Fisher thought that in order to terminate plaintiff, plaintiff first had to be a PIP [*Id.*]. Further, Fisher had a conversation with Stewart in which Fisher told Stewart he could apply for plaintiff's position should it become available [*Id.* at 37]. Fisher then placed plaintiff on a PIP and participated in plaintiff's termination a little over a month and half later. After plaintiff was terminated, defendant hired a younger person and the only individual defendant interviewed for plaintiff's position was, by Fisher's standards, "a younger guy" [Doc. 27-10 p. 38].

17

In support of the termination, defendant contends that once plaintiff was on the PIP he did not meet the expectations lined out in the plan. But, a reasonable jury could find that Fisher's actions, in a way, set plaintiff up to fail. Plaintiff contends that he never received the attachments A, B, and C, referenced in the PIP [Doc. 27-8 p. 24–25]. The PIP required that Fisher "closely monitor [plaintiff's] performance" and provide plaintiff with feedback [*Id.* at 31]. However, the only time plaintiff and Fisher met regarding his performance was on February 27, and during that meeting Fisher did not provide any substantive feedback [Doc. 27-9 p. 5]. Even though the PIP required plaintiff and Fisher to meet weekly on specified dates, plaintiff contends that—other than this February 27 meeting—they never met again to discuss plaintiff's performance under the PIP [Doc. 27-8 p. 32; Doc. 27-9 p. 5]. Despite that, Fisher produced four "Coaching for Success" forms that purport to document meetings plaintiff contends never took place [Doc. 27-11 pp. 179 –81, 183]. A reasonable jury could find that these meetings did not take place and that Fisher fabricated these documents in order to provide a basis for plaintiff's termination.

Moreover, if a reasonable jury finds that Fisher decided to terminate plaintiff at the time he was placed on the PIP, rather than the time he actually recommended termination, the statements Fisher made to plaintiff regarding his age have even more weight. Fisher told plaintiff that he was "too f------ old to do his job" at a time much closer in proximity to the date he initiated the PIP than the date plaintiff was terminated.

18

Based on the facts just discussed, the Court finds that plaintiff has presented sufficient evidence from which a reasonable trier of fact could find defendant's explanation unworthy of credence and infer discriminatory intent. Specifically, there is evidence that the proffered reason did not actually motivate the defendant's challenged conduct. *Wexler*, 317 F.3d at 576. Accordingly, for purposes of summary judgment review, plaintiff has raised a question of fact that defendant's explanation is a pretext for discrimination.

## V. Conclusion

For these reasons, plaintiff has set forth circumstantial evidence which, taken collectively and in the light most favorable to him, creates genuine issues of material fact as to whether defendant discriminated against him in violation of the ADEA and THRA. Accordingly, defendant's Motion for Summary Judgment [Doc. 17] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE